E-FILED
Thursday, 26 March, 2026  03:44:20 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ANTHONY SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-4059 |
| | ) | |
| GERALD CARREON, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, proceeding pro se and presently detained at Rushville Treatment and Detention Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging a Fourteenth Amendment claim related to treatment he received at the facility. The matter comes before this Court for ruling on Defendants' Motion for Summary Judgment (Doc. 151) and Motion to Supplement Motion for Summary Judgment (Doc. 153).

### DEFENDANTS' MOTION TO SUPPLEMENT (DOC. 153)

Defendants' motion seeks to supplement their motion for summary judgment with additional exhibits and asserted facts. Plaintiff has not opposed the motion. The motion is granted.

### BACKGROUND

Plaintiff was detained at Rushville Treatment and Detention Facility ("TDF") pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 Ill. Comp. Stat. § 207/1 *et seq.* ("SVP Act"). The SVP Act defines "sexually violent person" as "a

person who has been convicted of a sexually violent offense…and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 Ill. Comp. Stat. § 207/5(f). An individual remains committed until such time that the state court finds he is no longer a sexually violent person. *Id.* § 207/40(a).

The TDF offers mental health treatment to its residents designed to address the mental health conditions that predicate the residents' confinement. As the Seventh Circuit summarized:

> Rushville staff take a phased approach to treating detainees' mental disorders. Treatment teams evaluate detainees and work with them to tailor a master-treatment plan, which identifies objectives that the detainee must accomplish to progress to the next phase of treatment, eventually culminating in release. The master plan also identifies group-therapy courses designed to help the detainee attain his near-term objectives. But successful completion of such courses does not guarantee progression to more advanced courses or treatment phases. (For instance, the treatment team may compel a detainee to repeat certain treatments if it believes he has backtracked on his past objectives.)

*Mackel v. Jumper*, 2024 WL 3250356, at *1 (7th Cir. 2024). The treatment program is voluntary, and residents who consent to treatment are placed on treatment teams and assigned to a primary therapist. *E.g.*, *Lehn v. Scott*, No. 4:15-cv-4142, ECF No. 64 at 4-5 (C.D. Ill., filed Aug. 20, 2020). Treatment staff may also refer residents to ancillary groups designed to address barriers identified during core treatment. *Pegues v. Liberty Healthcare Corp.*, 2022 WL 4553190, at *1 (C.D. Ill., filed Sep. 14, 2022).

Plaintiff consented to treatment shortly after his arrival at the facility in 2013. Pl.'s Dep. 7:15-17. Plaintiff advanced to Phase II disclosure group in 2017. *Id.*

Page **2** of **11**

12:4-7. Residents in disclosure group "take turns or 'focuses' to fully report and take responsibility for their sexual offending history, including offenses for which they were never charged." (Doc. 151-5 at 8). Treatment providers verify a resident's transparency on this topic via a polygraph examination. *Id.* In April 2019, Plaintiff had a "significant response" during a polygraph examination to questions regarding whether he has ever forced a male to have sexual contact, whether he has more victims that those reported to his therapist, and "other than the one time, have you urinated on anyone?" *Id.* at 10.

Plaintiff's treatment team at the time referred him to Power to Change, an ancillary group designed to address barriers to treatment, which he successfully completed. Pl.'s Dep. 13:4-13. Except for Defendant Carreon, who was part of one of Plaintiff's treatment teams several years prior, none of the defendants were involved in Plaintiff's treatment during this time. *Id.* 15:12-23. Plaintiff returned to Phase II disclosure group in July 2021. *Id.* 13:11-13. Plaintiff does not assert any claims for treatment provided prior to his return to disclosure group. *Id.* 15:24-16:3.

During the period relevant to this lawsuit, Defendants Schupick and Bygrave facilitated Plaintiff's disclosure group. Pl.'s Dep. 18:7-14. Defendant Bygrave was also Plaintiff's primary therapist. *Id.* 17:18-19. The other defendants were not present during group sessions; they were involved solely in their capacities as the team members that made decisions regarding Plaintiff's treatment. *Id.* 37:18-22. Treatment notes indicate that from July 2022 through early December 2022, Defendants Schupick and Bygrave asked Plaintiff to discuss the issues disclosed

during the April 2019 polygraph. (Doc. 151-4 at 29-35). In July 2022, Plaintiff denied having any previous sexual interactions with males, but later disclosed that "at age ten he was grinding with a same age guy." *Id.* at 34. He responded to a question in August 2022 about statements he made during the polygraph by stating, "males doesn't [sic] exist." *Id.* at 33. In September 2022, Plaintiff "reiterated that he did not have male victims," and told the group that he was trying to obtain the polygraph recording. *Id.* at 32. In October 2022, Plaintiff "identified male victims" and that "he did grind up against a boy, but there was no intent." *Id.* at 31. Plaintiff refused to elaborate on a statement he made in December 2022 that the word "fag" had been weaponized against him as a child. *Id.* at 29.

Treatment notes also indicate that Plaintiff expressed displeasure during the same group sessions about being asked to complete work he believed he had completed prior to the April 2019 polygraph and to consider the contradictory statements discussed above. *Id.* at 33 (Plaintiff "explained that he did not have treatment work to present because he is stalled on waiting to retake the polygraph."); *id.* at 32 (Plaintiff "explained he had already processed [the topic of sexual interactions with males] in his timeline" and that he had told the evaluator "crazy things about his sexual history" in an effort to get sent to treatment instead of prison); *id.* at 31 (Plaintiff "was challenged to discontinue commenting on how much work he has done and to describe his functioning in the here-and-now."); *id.* at 29 ("I'm not making progress. It's on paper. I've already processed it. I've been doing the same shit every day.").

Page **4** of **11**

Plaintiff testified at his deposition that Defendant Schupick and Bygrave were "more interrogative" and had "more of an attitude" towards him during group sessions. Pl.'s Dep. 19:2-5. Plaintiff testified that these defendants continued "talking about sex offenses or being offended and seeing that it's a negative reaction and continuing to want to bring that part up in front of the rest of the group." *Id.* 27:8-11. Plaintiff testified that these defendants subjected him to "shame-based" treatment that lacked any "purpose behind it other than making you feel the emotions." *Id.* 26:19-20, 28:1-3. Plaintiff testified that it "put me in the state of mind of feeling bad in group." *Id.* 28:8-9.

Plaintiff declined Defendant Schupick's offer on December 1, 2022, to complete phase III journaling regarding his history of sexual abuse because doing so "came without a guarantee of it counting toward phase three requirements." (Doc. 151-4 at 27). Plaintiff's treatment team collectively made the decision on or about December 6, 2022, to refer Plaintiff to the Power to Change group to "address barriers of lack of initiative, lack of effort, victim stance, and double speak." *Id.* at 29.

Plaintiff disclosed during the Power to Change group in December 2022 that he had been sexually abused as a child by two same sex family members. *Id.* at 28. He also disclosed consensual sexual contact with a male "that was experimental." *Id.* During the ensuing months leading up to the date that he filed this lawsuit, Plaintiff reiterated during the Power to Change group sessions that he had already completed the work, that he did not have any barriers to treatment that he needed

to work on, and that group facilitators had not taken steps to help him move forward in treatment. *Id.* at 13, 18, 21-22, 25-26, 28.

Notwithstanding these issues, an independent evaluator recommended that Plaintiff "should no longer be found a Sexually Violent Person under the [SVP Act]," and that he should be discharged from treatment. (Doc. 151-5 at 21). The record does not disclose the status of the state court commitment proceedings underlying Plaintiff's confinement or any action the state court took in response to these findings.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**DISCUSSION**

The Fourteenth Amendment requires that the conditions and duration of a detainee's confinement bear some reasonable relationship to the reasons for same. *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). TDF officials must therefore provide "some treatment" related to Plaintiff's underlying mental health conditions, the nature of which is left to the discretion of qualified mental health professionals. *Id.* at 1081. To prevail on a claim that he did not receive adequate mental health treatment, Plaintiff must show that an official's deliberate or reckless conduct was objectively unreasonable. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352-53 (7th Cir. 2018).

The objective reasonableness inquiry "requires courts to focus on the totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 888 (7th Cir. 2018). Liability attaches only where the official "acted purposefully, knowingly, or perhaps even recklessly" when taking the actions at issue—negligence, or even gross negligence, will not suffice. *Miranda*, 900 F.3d at 352-53. Treatment decisions made by qualified professionals are "presumptively valid" and entitled to deference unless the evidence shows that the decision constituted "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible

Page **7** of **11**

actually did not base the decision on such a judgment." *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019) (citing *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)).

Plaintiff testified that his claims are limited to the treatment Defendants Schupick and Bygrave provided during disclosure group, their recommendation to refer Plaintiff to Power to Change, and his treatment team's collective decision to accept that recommendation. Pl.'s Dep. 26:9-24, 38:22-39:1, 40:5-8, 42:20-24. Plaintiff also asserts a claim against Defendant Carreon based upon the fact that the Power to Change group met for only one hour, once per week. *Id.* 40:16-19. Plaintiff does not assert claims related to treatment received while attending the Power to Change group in December 2022 and thereafter. *Id.* 26:4-8.

The facilitators of Plaintiff's disclosure group prior to April 2019 apparently concluded that Plaintiff had successfully completed the required group work, at least to the point that warranted the polygraph examination necessary for Plaintiff to advance in treatment. Defendants Schupick and Bygrave were not constitutionally required to defer to Plaintiff's previous treatment team, especially considering that the April 2019 polygraph results and the information he subsequently disclosed regarding same-sex sexual encounters suggest only that he had not been fully transparent as required during this phase of treatment. *Cf. Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012).

Their decision to confront Plaintiff with these issues in group treatment and to continue despite his emotional discomfort does not permit a reasonable inference that they failed to exercise the requisite professional judgment. *See McKune v. Lile*,

536 U.S. 24, 33 (2002) ("An important component of [sex offender] rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct."); *Allison*, 332 F.3d at 1080 ("As the Court stated in *McKune,* many specialists think that self-accusatory features are essential to treatment (just as alcoholics must admit that they have a problem)."). Plaintiff's disagreement with Defendants' methods is also not sufficient to impose liability. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A]n inmate is not entitled to demand specific [medical] care."); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (a mere disagreement with the course of treatment, standing alone, is not sufficient to attach constitutional liability); *Powers v. Block*, 750 F. App'x. 480, 484-85 (7th Cir. 2018).

Defendants Schupick and Bygrave did not recommend that Plaintiff be removed from the group and referred to Power to Change until he had persisted for several months in his position that he had already completed the work and he resisted their efforts to resolve conflicting statements regarding his sexual history. Plaintiff had successfully completed Power to Change in the past to address other barriers, and nothing in the record suggests that he would not do so at the time Defendants made the relevant decisions. The record does not permit a reasonable inference that Defendant Schupick's and Bygrave's recommendation for Plaintiff's transfer to Power to Change or the other defendants' decision to accept it lacked the exercise of acceptable professional judgment or was objectively unreasonable.

Plaintiff's argument that his treatment is constitutionally deficient solely because it is offered for only one hour per week is also not sufficient to prevail under the Fourteenth Amendment, absent evidence that Defendants substantially departed from acceptable professional judgment. *Powers*, 750 F. App'x. at 484 (the fact that other programs may provide a greater number of treatment hours does not permit an inference that treatment programs offering fewer hours are unconstitutional). Plaintiff has not presented evidence that the alleged deficiency in the number of hours he attended treatment groups affected his progression through treatment, and the independent evaluator's conclusion that Plaintiff should no longer be considered a sexually violent person suggests that the treatment has been successful to some degree.

## CONCLUSION

The record does not permit a reasonable inference that Defendants' actions were objectively unreasonable. The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's constitutional rights.

**THEREFORE:**

1) **Defendants' Motion [153] is granted.**

2) **Defendants' Motion for Summary Judgment [151] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed herein are denied as moot, and this case is terminated.**

3) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d**

**396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.**

*SO ORDERED.*

Entered this 26 day of March, 2026.

s/Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge